UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

REBECCA MONTERO,

       Plaintiff,

  v.                                                  19-CV-250
                                                         DECISION & ORDER
ANDREW SAUL
Commissioner of Social Security,

       Defendant.

---

On February 26, 2019, the plaintiff, Rebecca Montero, brought this action under the Social Security Act. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On October 16, 2019, Montero moved for judgment on the pleadings, Docket Item 10; on January 14, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 14; and on February 4, 2020, Montero replied, Docket Item 16.

For the reasons stated below, this Court grants Montero's motion in part and denies the Commissioner's cross-motion.[1]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the

---

[1] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

**I.     ALLEGATIONS**

Montero argues that the ALJ erred in two ways. Docket Item 10-1 at 17. First, she argues that the ALJ's determination of her physical RFC is not supported by substantial evidence. *Id.* at 19. Second, she argues that the ALJ's determination of her mental RFC is not supported by substantial evidence. *Id.* at 20. This Court agrees that the ALJ erred and remands this matter to the Commissioner.

**II.    ANALYSIS**

In denying Montero's application, the ALJ evaluated Montero's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 416.920(a)(2). At the first step, the ALJ determines whether the claimant currently is engaged in substantial gainful employment. § 416.920(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 416.920(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 416.920(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 416.920(a)(4).

At step three, the ALJ determines whether any severe impairment or combination of impairments meets or equals an impairment listed in the regulations. § 416.920(a)(4)(iii). If the claimant's severe impairment or combination of impairments meets or equals one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that no severe impairment or combination or impairments meets or equals any in the regulations, the ALJ proceeds to step four. § 416.920(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 416.920(a)(4)(iv); 416.920(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and non-severe medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* § 416.945.

After determining the claimant's RFC, the ALJ completes step four. § 416.920(e). If the claimant can perform past relevant work, he or she is not disabled

3

and the analysis ends.  § 416.920(f).  But if the claimant cannot, the ALJ proceeds to step five.  §§ 416.920(a)(4)(iv); 416.920(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 416.920(a)(4)(v), (g).  More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Here, the ALJ found at step one that Montero had not engaged in substantial gainful activity since the alleged onset date.  Docket Item 5 at 22.  At step two, the ALJ found that Montero had "the following severe impairments: degenerative disc disease of the lumbar spine[;] degenerative joint disease of the left knee[; and] psychiatric impairments alternatively diagnosed as depression, anxiety, bipolar disorder, history of posttraumatic stress disorder (PTSD), and polysubstance abuse."  *Id.*

At step three, the ALJ determined that Montero did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  *Id.*  More specifically, the ALJ found that Montero's degenerative disc disease of the lumbar spine did not meet Listing 1.04 (spinal disorders) and that her degenerative joint disease of the left knee did not meet Listing 1.02 (major joint dysfunction).  *Id.* at 23.  The ALJ also found that Montero's mental impairments did not meet Listing 12.04 (depressive, bipolar, and

related disorders), Listing 12.06 (anxiety and obsessive-compulsive disorders), or Listing 12.15 (trauma and stressor-related disorders).  *Id.* at 23-24.

The ALJ then found that Montero had the following RFC:

> [Montero can] perform light work[2] . . . except she is prohibited from climbing ladders, ropes, or scaffolding[;] . . . is limited to only occasional climbing of ramps and stairs[;] . . . can occasionally balance, stoop, kneel, crouch, and crawl[;] . . . needs to avoid slippery and uneven surfaces as well as hazardous machinery, unprotected heights, and open flames[;] . . . is limited to doing simple, routine, and repetitive tasks, working in a low stress job defined as being free of fasted paced production requirements, with no hazardous conditions, only occasional decision making required, only occasional changes in the work setting, and . . . only occasional interaction with coworkers and supervisors[;] . . . [and] can have no direct interaction with the general public.

*Id.* at 24 (footnote added).  The ALJ explained that although "[Montero]'s medically determinable impairments could reasonably be expected to cause [her] alleged symptoms[,] . . . [Montero]'s statements concerning the intensity, persistence and limiting effects of [those] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record."  *Id.* at 30.  In reaching this determination, the ALJ gave "partial weight" to the opinions of the psychological consultant, G. Kleinerman,[3] and the mental consultative examiner, Kristina Luna, Psy. D., and no

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).

[3] State agency psychological consultant Dr. Kleinerman's first name and credentials are not provided, but the medical code listed—"37"—indicates a specialty in psychiatry.  *See* Docket Item 5 at 99; *see also* Social Security Program Operations Manual System (POMS) DI 24501.004(B), *available at* https://secure.ssa.gov/poms.nsf/lnx/0424501004.

weight to the opinion of the physical consultative examiner, Samuel Balderman, M.D. *Id.* at 31.

At step four, the ALJ found that Montero had no past relevant work. *Id.* at 32. And at step five, the ALJ found that "[c]onsidering [Montero's] age, education, work experience, and [RFC], there [were] jobs that exist[ed] in significant numbers in the national economy that [Montero could] perform." *Id.* Specifically, the ALJ credited the testimony of a vocational expert ("VE") that Montero could find work as an electronics worker, small products assembler, or housekeeper. *Id.* at 33.

### A. Physical RFC

When determining a plaintiff's RFC, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 416.927(c). "[O]nly 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight. 'Acceptable medical sources' are further defined (by regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (citing 20 C.F.R. § 416.913(a) and Social Security Ruling ("SSR") 06-03P, 2006 WL 2329939 (Aug. 9, 2009)). Thus, while the ALJ may consider the opinions of "other sources"—e.g., nurse practitioners—there is no obligation to assign weight or give deference to these sources. *Id.* But the ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03P, at *6. When there is conflicting evidence in the claimant's record, "[t]he consistency of the

opinion with the other evidence in the record is a proper factor for an ALJ to consider when weighing an opinion from an 'other source.'" *Id.* at *4 (citing 20 C.F.R. § 404.1527(d) and § 416.927(d)).

The ALJ did not rely on any medical opinions in determining Montero's physical RFC. *Id.* at 31.[4]  For that reason, and because the medical evidence did not provide the measured and detailed findings that might support the RFC, the ALJ necessarily relied only on his own lay judgment. *See Sherry v. Berryhill*, 2019 WL 441597, at *5 (W.D.N.Y. Feb. 5, 2019) ("The Court cannot conclude that there was substantial evidence to support the ALJ's RFC determination that plaintiff was capable of light work with restrictions and is left without a clear indication of how the ALJ reached the RFC determination without resorting to impermissible interpretation of raw medical data."). In doing so, the ALJ erred:  "Although the RFC determination is an issue reserved for the [C]ommissioner, an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Thomas v. Comm'r of Soc. Sec.*, 2019 WL 2295400, at *2 (W.D.N.Y. May 30, 2019) (quoting *House v. Astrue*, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013)).

---

[4] As noted above, the ALJ gave no weight to the opinion of Dr. Balderman—the only medical opinion in the record regarding Montero's physical limitations.  Although a state agency single decisionmaker ("SDM"), S. Johnson, also opined on Montero's RFC, Johnson does not appear to be a medical professional.  *See* Docket Item 5 at 94-96; *see also* Social Security Program Operations Manual System (POMS) DI 12-15.100(B)(1), *available at* https://secure.ssa.gov/poms.nsf/lnx/0412015100 (explaining that "Disability Examiners with SDM authority completed all disability determination forms and made initial disability determinations in many cases without medical or psychological consultant (MC or PC) signoff").  Moreover, the ALJ did not mention Johnson's assessment in his decision.

7

The ALJ's specific findings illustrate the point. For example, it is not at all clear how the ALJ was able to determine that despite the "severe . . . degenerative disc disease of the lumber spine," Docket Item 5 at 22, Montero still would be able to perform "light work," which generally requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday," SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). To the contrary, Montero testified that she could not stand for more than fifteen or twenty minutes at a time before having to take a break. Docket Item 5 at 63. But the ALJ never even mentioned that testimony; nor did he provide any basis in the medical record for his implicit conclusion that Montero could stand or walk off and on for six hours a day.

It is likewise unclear how the ALJ determined that Montero could occasionally climb ramps and stairs, as well as balance, stoop, kneel, crouch, and crawl, notwithstanding her "severe . . . degenerative joint disease of the left knee." *See id.* at 22, 24. Similarly, there appears to be no medical basis for the ALJ's conclusion that "avoid[ing] slippery and uneven surfaces as well as hazardous machinery, unprotected heights, and open flames" would allow Montero to perform light work despite her severe spine and knee injuries. *See id.* at 24.

What is more, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel.'" *Rosa*, 168 F.3d at 79 (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)). Here, there were indeed such deficiencies, and the ALJ therefore was obligated to develop the record regarding Montero's functional capacity during the period of disability. *See Sobolewski v. Apfel,* 985 F. Supp. 300, 314 (E.D.N.Y. 1997)

("The record's virtual absence of medical evidence pertinent to the issue of plaintiff's RFC reflects the Commissioner's failure to develop the record, despite his obligation to develop a complete medical history."). The ALJ's failure to do that was error as well.

For example, as discussed above, the ALJ completely rejected Dr. Balderman's opinion that Montero "has mild to moderate limitations in kneeling and climbing due to left knee pain" simply because the ALJ found Dr. Balderman's language to be "vague and imprecise." *See* Docket Item 5 at 31, 471. In fact, the ALJ twice said that he gave "*no* weight" to that opinion not because it was inconsistent with other evidence in the record but only because of its vagueness and imprecision. *Id.* at 31 (emphasis added). But the ALJ easily could have recontacted Dr. Balderman to clarify his opinion, solicited other opinions on the same medical issues, or both. *See Thomas*, 2019 WL 2295400, at *2 (explaining that "an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence" (quoting *House*, 2013 WL 422058, at *4)). And the ALJ's failure to do so left his RFC unsupported by medical evidence in the record.

"[T]he absence of a properly grounded RFC constitutes legal error that requires remand regardless of any underlying data." *Id.* Under the circumstances here, the ALJ's failure to obtain a medical opinion regarding Montero's functional capacity constituted such an error. *See id.* (remanding where "[a]ll of the records in the case consist of clinical notes that have no medical source statements and no other assessments of plaintiff's exertional and non-exertional abilities," yet "the Commissioner crafted a very specific RFC"); *Perkins v. Berryhill*, 2018 WL 3372964, at *4 (W.D.N.Y. July 11, 2018) ("Without reliance on a medical source's opinion or a function-by-function

9

assessment connecting the medical evidence to the RFC, the ALJ's decision leaves the Court with many unanswered questions and does not afford an adequate basis for meaningful judicial review.").

In light of the ALJ's improper reliance on his own lay judgment to formulate Montero's physical RFC, as well as the ALJ's failure to fill the substantial gaps in the record, the Court remands this matter. On remand, the ALJ should develop the medical record with respect to Montero's physical RFC.

### B. Stress Tolerance

Because the Court is remanding on other grounds, it notes a separate legal error that should be addressed on remand: the ALJ failed to make specific findings regarding Montero's ability to tolerate stress.

When an ALJ limits the claimant to a "low stress" job, the ALJ is required to make "specific findings about the nature of [the] claimant's stress, the circumstances that trigger it, and how those factors affect [her] ability to work." *Stadler v. Barnhart*, 464 F. Supp. 2d 183, 189 (W.D.N.Y. 2006) (citing SSR 85-15, 1985 WL 56857, at *6 (Jan. 1, 1985) (explaining that "[b]ecause response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job . . . [and a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment")). As the Commissioner's own regulations explain:

> A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job. [F]or example, a busboy need only clear dishes from tables. But an individual with a severe mental disorder may find unmanageable the demands of making sure that he removes all the dishes, does not drop them, and gets the

> table cleared promptly for the waiter or waitress. Similarly, an individual who cannot tolerate being supervised may not be able to work even in the absence of close supervision; the *knowledge* that one's work is being judged and evaluated, even when the supervision is remote or indirect, can be intolerable for some mentally impaired persons.

SSR 85-15, 1985 WL 56857, at *6 (emphasis in original). In other words, an ALJ must consider how a claimant's stress tolerance could impact her ability to perform the specific job or jobs that *otherwise fit her RFC profile*.

The ALJ here failed to undertake that individualized inquiry in concluding that Montero could perform work as an electronics worker, small products assembler, or housekeeper. *See* Docket Item 5 at 32-33 (relying on VE's testimony that Montero could perform these jobs even with the limitation of "low stress job" without further explanation of how her individualized stress might impact her performance). On remand, the ALJ should correct this legal error by addressing whether Montero's individualized stress tolerance would prevent her from performing any of the jobs identified by the VE at step five.

For all those reasons, this Court remands this matter for reconsideration of the deficiencies noted above.[5] On remand, the ALJ should ensure that any specific RFC limitations—such as the ability to occasionally balance, stoop, kneel, crouch, and crawl—are grounded in specific medical evidence in the record, not the ALJ's "own surmise." *See Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (summary order).

---

[5] The Court "will not reach the remaining issues raised by [Montero] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, No. 1:13-CV-924, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made.").

11

The ALJ also should consider and specifically address the impact of Montero's response to stress on her ability to work.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 14, is DENIED, and Montero's motion for judgment on the pleadings, Docket Item 10, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: July 14, 2020
       Buffalo, New York

> />s/ Lawrence J. Vilardo*
> LAWRENCE J. VILARDO
> UNITED STATES DISTRICT JUDGE